70 N.J. Super. 389 (1961)
175 A.2d 504
DOUGLAS NILSON, PLAINTIFF,
v.
STANLEY W. MOSKAL, JR., DEFENDANT, THIRD-PARTY PLAINTIFF
v.
MADISON TOWNSHIP POLICE DEPARTMENT AND WILLIAM C. BURLEW, THIRD-PARTY DEFENDANTS.
ROBERT PEPSNY, PLAINTIFF,
v.
STANLEY W. MOSKAL, JR., MADISON TOWNSHIP POLICE DEPARTMENT AND WILLIAM C. BURLEW, DEFENDANTS.
Superior Court of New Jersey, Middlesex County Court, Law Division.
Decided November 6, 1961.
Mr. Leon Lesnick, attorney for defendant and third-party plaintiff Moskal.
Mr. Albert M. Neiss, attorney for defendants and third-party defendants Madison Township Police Dept. and Burlew.
*390 SCHWARTZ, J.C.C.
Plaintiff Nilson sued Moskal in tort. Moskal was granted leave to file a third-party complaint whereby he impleaded Burlew and the Madison Township Police Department for contribution.
Moskal settled with Nilson, a conventional release was delivered by Nilson to Moskal, and Moskal now desires to proceed for recovery of contribution from Burlew and the police department. The third-party defendants move for summary judgment, contending the relief sought does not exist under authority of our statute.
The question of law thus raised is as follows:
Does a settlement extinguish a tortfeasor's right to contribution?
While the effect of a settlement on the injured plaintiff and a co-defendant and third-party defendant has been considered and determined in New Jersey, the effect of a settlement on the further right of the settler to contribution appears undecided. See Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954); Sattelberger v. Telep, 14 N.J. 353 (1954).
Our statute has four sections. The first and second define "joint tortfeasor and declare that contribution exists." The third is the only direct source, delineating the right that now prevails where none did at common law. The fourth section merely deals with the effective date of the newly created rights.
The third section provides as follows:
"Where injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors, and the person so suffering injury or damage recovers a money judgment or judgments for such injury or damage against one or more of the joint tortfeasors, either in one action or in separate actions, and any one of the joint tortfeasors pays such judgment in whole or in part, he shall be entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share; but no person shall be entitled to recover contribution under this act from any person entitled to be indemnified by him in respect to the liability for which the contribution is sought." N.J.S. 2A:53A-3. (Emphasis supplied)
*391 To recover contribution, the statute conjunctively requires that (1) the injured person recover a judgment, and (2) one of the sued tortfeasors pay such judgment "in whole or in part."
The contribution now available being statutory "the law `infers that the act did not intend to make any alteration other than what is specified, and besides what has been plainly pronounced, for if the parliament had had that design, it is naturally said they would have expressed it.'" Breen v. Peck, 28 N.J. 351, 369 (1958).
While we have had reported decisions in which we find statements indicative of our view, it is conceded that such authorities are not factually parallel with the instant situation. However, we draw on them for support in the absence of anything more specific.
In Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372, 382 (1954), the court said "the statutory right of action for contribution accrues only on the payment by a joint tortfeasor of a money judgment recovered against him," and at page 383 it was said, "The operative act is the payment of more than the judgment debtor's pro rata share of the tort liability established by the judgment."
In Kennedy v. Camp, 14 N.J. 390, 395 (1954), it was said:
"The right of contribution, N.J.S. 2A:53A-3, comes into being when injury or damage is suffered by any person in consequence of `the wrongful act, neglect or default of joint tortfeasors,' as so defined, and the injured person recovers `a money judgment or judgments for such injury or damage against one or more of the joint tortfeasors, either in one action or in separate actions, and any one of the joint tortfeasors pays such judgment in whole or in part'; the recovery is to be had from `the other joint tortfeasor or joint tortfeasors for the excess so paid over' the payor's `pro rata share.'"
The third-party plaintiff resists the motion on the hypothesis that "the judgment has not yet taken place" here and he proposes now to proceed to the judgment. He feels that is his prerogative and presumably (although not argued) *392 maintains that his payment in settlement (preceding the anticipated judgment) is the payment which brings him within the ambit of the act. The time-honored notion of a judgment usually preceding payment of a judgment would thus be altered in this instance. Does the statute contemplate such unusual procedure? Irrespective of what importance is to be attached to "which came first" I move on to dispose of the issue on the basis of the statutory language (which cannot be said to be ambiguous in this respect), the meager authority available as well as the untoward consequences of claimants' theory.
While the court is aware of the anticipatory relief allowable in advance of payment (see Mijon v. Acquaire, 51 N.J. Super. 426, 439 (App. Div. 1958), the claimant here is no longer seeking anticipatory relief. He maintains his right has accrued. He now seeks finalization of his "inchoate right" and rests on the foundation of a voluntary payment. He now, necessarily, seeks to establish the judgment against himself and third-party defendant, to be followed by enforcing contribution on the basis of such judgment and the payment he has already made.
The Joint Tortfeasors Contribution Law, N.J.S. 2A:53A-1 et seq., after declaring that the right of contribution exists, merely gives a right of action to one joint tortfeasor, after he has paid a "judgment in whole or in part" to recover contribution from the other joint tortfeasor or tortfeasors "for the excess so paid over his pro rata share." (Emphasis supplied) N.J.S. 2A:53A-3; Mijon v. Acquaire, supra.
The question was treated directly in 7 Rut. L. Rev. 380, where it is stated that "a tortfeasor who settles prior to judgment or otherwise pays a claim of an injured party without the sanction of a judgment is not entitled to contribution from the other tortfeasors. * * * Needless to say the language of the statute repels the idea that the right to contribution may be founded on payments other than those made under compulsion of a judgment."
*393 The argument that settlements are stifled if contribution does not survive such a settlement, has little merit. Both injured party, in accepting a settlement, and a joint tortfeasor who desires not to settle, have taken (undoubtedly calculated) risks and are concluded against a settler. Does not settler, too, take a calculated risk? There is no equity in a rule which would enable a settler to still seek some recoupment. "The rationale of contribution is compensation for the release of the joint tortfeasor's positive liability for the wrong effected by payment of the judgment according to the equitable doctrines respecting unjust enrichment and restitution." (Emphasis supplied) Kennedy v. Camp, supra, 14 N.J., at p. 399. A settler buys his complete peace. A tortfeasor who pays at least his pro rata share after judgment or an alleged tortfeasor who settles for any amount prior to judgment, receives credit for his aliquot share of the judgment obtained either before or after the payment. He is presumed to know this and deals on that basis. Judson v. Peoples Bank & Trust Co. of Westfield, supra. Neither a plaintiff nor any tortfeasor can thereafter disturb him. His liability is fully concluded. This, in my judgment, furnishes sufficient incentive to settle. The injured party must give other tortfeasors pro rata credit on any future judgment. Oliver v. Russo, 29 N.J. 418 (1959); Judson v. Peoples Bank & Trust Co. of Westfield, supra; Smootz v. Ienni, 37 N.J. Super. 529 (Cty. Ct. 1955). The (alleged) undesirable influence on settlements was discussed in Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J., at page 93, and minimized.
It is further contended by third-party plaintiff, that if such a settlement has the legal effect claimed by the third-party defendant seeking this relief, there is no need for any action by this court; that nothing further need be done with the record. This position is not only untenable but difficult to understand.
*394 The release not being part of the record, a failure to dispose of the matter would leave the status dependent upon matters dehors the record.
A court should terminate a litigated issue with a clear and categorical decision so that all parties can appraise their position without reference to matters outside the record.
To follow third-party plaintiff's view would be to sweep the matter under the rug, so to speak.
The modus operandi of a proceeding, such as contended for by third-party plaintiff, would not be without interest (if not entertainment). Since neither liability nor damages have been yet fixed (the settlement binding only the parties thereto), they must be established: "There is no right of contribution unless there be joint wrongdoers under a joint or several liability to the injured person for the injurious consequences of the wrongful act, neglect or default reduced to judgment." Kennedy v. Camp, supra, 14 N.J., at p. 397. Third-party plaintiff must prove he is liable as well as third-party defendant. Cf. Bray v. Gross, 16 N.J. 382 (1954). I hardly think he could admit liability, for contribution purposes, on his part, any more than third-party defendant could admit liability solely and thus escape liability for contribution. If it results that third-party defendant alone is at fault he obviously cannot be called upon for contribution. Furthermore, since the injured is not claiming against him, he could argue that the injured is entitled to a large verdict even if liability is joint and if it eventuates that the judgment is twice the settlement, or beyond that, he could likewise escape, since the settlement payment is the payment on which third-party plaintiff rests. The examination of experts who treated the injured, as well as experts produced by third-party defendant, would prove to be quite unconventional. A defendant importuning for a large verdict and absolution of his codefendant might be a little difficult for 12 citizens to comprehend. Such a feigned issue hardly fits in our adversary system.
*395 Projected a step further, after such a judgment is returned against third-party defendant, might not this fertilize a new idea in the mind of the injured, evoke a rebuke to his former counsel (for failing to join a party responsible to him), followed by engaging more astute counsel to bring action against the real culprit, who apparently neither he nor his attorney felt was responsible for the mishap in the first place?
This should suffice to demonstrate the fantasy of the consequences attendant upon denial of this motion. Could our Legislature have intended so absurd a result? If so, the act needs reappraisal more quickly than has already been suggested.
The question raised requires the following statements, notwithstanding they may appear axiomatic.
One seeking contribution must be or have been a party to a proceeding where it is or was claimed by another that he is a tortfeasor; and where no party remains in a proceeding to charge a person as a tortfeasor, such person cannot continue to maintain he is a tortfeasor.
A settlement does not establish the settler as a tortfeasor for the purpose of seeking contribution; and a proceeding cannot be instituted by a person for the purpose of establishing himself as a tortfeasor, nor can a suit continue on such basis, with contribution as the objective.
A person cannot seek contribution unless or until some other party first asserts such person is a tortfeasor.
The status of a tortfeasor (under N.J.S.A. 2A:53A-1 et seq.) cannot be established by a settlement, and an alleged tortfeasor who settles prior to judgment is not entitled to contribution.
The aim of the statute is to make a settler responsible for his pro rata share. "Any remaining problems of contribution are limited to such as may arise among the non-settling defendants when the payment by any one of them on the reduced joint judgment exceeds his pro rata share of the total damage." Judson v. Peoples Bank & Trust Co. *396 of Westfield, supra, 17 N.J., at p. 93. (emphasis supplied.) Cf. Gottfried v. Temel's Restaurant Inc., 69 N.J. Super. 62 (App. Div. 1961).
Will this result lead to the use of a consent judgment as an expedient to overcome denial of contribution to a settler? The statutory language seems clear when it says "recovers a money judgment."
A litigated adversary proceeding in good faith leading to a judgment is undoubtedly essential to establish the right to contribution.
In the consolidated case of Pepsny v. Moskal, Burlew and the Madison Township Police Department, the moving parties to this motion were joined as defendants by the injured, and Moskal asserted a cross-claim. Since there was likewise a settlement here between Moskal and Pepsny, the result reached is the same.
The motion will be granted.