192 N.J. Super. 561 (1983)
471 A.2d 790
ELDEN C. TEFFT AND MARY TEFFT, PLAINTIFFS,
v.
KIM TEFFT AND STATE OF KANSAS, DEFENDANTS, MILDRED WISMER, DEFENDANT-APPELLANT, AND KIM TEFFT, DEFENDANT-RESPONDENT-THIRD PARTY PLAINTIFF,
v.
KANSAS FIRE & CASUALTY INSURANCE COMPANY, THIRD PARTY DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 31, 1983.
Decided December 7, 1983.
*562 Before Judges BISCHOFF, PETRELLA and BRODY.
Bright & Zirulnik for appellant, Mildred Wismer (Stanley R. Bright of counsel and on the brief).
Lenox, Giordano, Devlin, Delehey & Socey, attorneys for respondent (Charles A. Delehey on the brief).
The opinion of the court was delivered by PETRELLA, J.A.D.
*563 The issue on this appeal is whether a cross-claim for contribution may be pursued by one settling defendant who has obtained a consent judgment, against the remaining settling defendant. The trial judge answered that question in the affirmative. We reverse and remand for the entry of an order dismissing all cross-claims.
The claim for contribution arose between two defendants in litigation which stemmed from an intersection accident in Hopewell, New Jersey in which Mary Tefft was a passenger in a car driven by her son, Kim Tefft. Their car collided with a car driven by defendant Mildred Wismer. Mary Tefft suffered a fractured dislocation of the right hip resulting in permanent disability.
Plaintiffs instituted suit claiming that both drivers were negligent. Elden C. Tefft asserted a per quod claim. Defendants cross-claimed against each other for contribution. After the jury found defendant Wismer 95% negligent and defendant Tefft 5% negligent in a trial of liability only, defendants each negotiated settlements with plaintiffs. Wismer was insured by a liability policy with a limit of $100,000. Defendant Tefft was insured for an unknown amount. Wismer's insurer paid her entire policy limits of $100,000 in exchange for a general release. Plaintiffs then settled the case for an additional $60,000 from defendant Kim Tefft, notwithstanding the jury having found him only 5% negligent. In an effort to preserve his cross-claim for contribution against settling defendant Wismer,[1] defendant *564 Tefft insisted on a consent judgment being entered against him in the amount of $60,000.
The consent judgment between only plaintiffs Tefft and defendant Tefft was entered over Wismer's objections. Defendant Tefft then successfully moved for summary judgment against Wismer on his contribution cross-claim. The trial judge entered a $52,000 judgment against Wismer because he considered Tefft liable for only 5% of the $160,000 settlement amount, notwithstanding his settlement with plaintiffs for $60,000. The parties concede that the damage claims had a potential in excess of $160,000. That may be stating the obvious if the parties paid that much in settlement. Of course, a jury verdict on damages could have been for a lower or higher amount, or even by coincidence the same amount.
The anomaly of the result of the judge's decision below is clear. Defendant Wismer having bought peace with plaintiff for her entire $100,000 policy, would be required to pay an additional $52,000 to a settling co-defendant without having any opportunity to negotiate how much defendant Tefft paid. Any such additional payment here would presumably have to be made by defendant Wismer personally in the absence of bad faith by her insurance carrier. See Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474 (1974) and Kaudern v. Allstate, 277 F. Supp. 83 (D.N.J. 1967).
*565 Contribution between joint tortfeasors under comparative negligence is governed by the interplay between the Joint Tortfeasors Contribution Act,[2]N.J.S.A. 2A:53A-1, et seq., and the Comparative Negligence Act, N.J.S.A. 2A:15-5.1, et seq. See generally Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 569-570 (1980); Ezzi v. De Laurentis, 172 N.J. Super. 592, 598 (Law Div. 1980); Polyard v. Terry, 148 N.J. Super. 202, 207 (Law Div. 1977), rev'd on other grounds 160 N.J. Super. 497 (App.Div. 1978), aff'd 79 N.J. 547 (1979). The right to contribution is stated in N.J.S.A. 2A:53A-3 as:
Where injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors, and the person so suffering injury or damage recovers a money judgment or judgments for such injury or damage against one or more of the joint tortfeasors, either in one action or in separate actions, and any one of the joint tortfeasors pays such judgment in whole or in part, he shall be entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share; but no person shall be entitled to recover contribution under this act from any person entitled to be indemnified by him in respect to the liability for which the contribution is sought.
Under the Comparative Negligence Act, N.J.S.A. 2A:15-5.1:
Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery is sought, or was not greater than the combined negligence of the persons against whom recovery is sought. Any damages sustained shall be diminished by the percentage sustained of negligence attributable to the person recovering.
The right to pro rata contribution was affected as to nonsettling defendants with the adoption of the Comparative Negligence Act which requires:

N.J.S.A. 2A:15-5.2:
In all negligence actions in which the question of liability is in dispute, the trier of fact shall make the following as findings of fact:

*566 a. The amount of damages which would be recoverable by the injured party regardless of any consideration of negligence, that is, the full value of the injured party's damages;
b. The extent, in the form of a percentage, of each parties' negligence. The percentage of negligence of each party shall be based on 100% and the total of all percentages of negligence of all the parties to a suit shall be 100%.
c. The judge shall mold the judgment from the finding of fact made by the trier of fact.

N.J.S.A. 2A:15-5.3:
The party so recovering, may recover the full amount of the molded verdict from any party against whom such recovering party is not barred from recovery. Any party who is so compelled to pay more than such party's percentage share may seek contribution from the other joint tortfeasors.
Thus, since Rogers v. Spady, 147 N.J. Super. 274, 277 (App.Div. 1977), pro rata share is deemed percentage share. Accord Cartel Capital Corp. v. Fireco. of New Jersey, supra 81 N.J. at 569.
It is true that N.J.S.A. 2A:53A-3 speaks in terms of damage suffered by any person where the injured person "recovers a money judgment or judgments for such injury or damage against one or more of the joint tortfeasors." However, it is obvious that what occurred here was actually a settlement with each of the two defendants. See Continental Ins. Co. v. Bayless & Roberts, Inc., 608 P.2d 281, 295-296 (Alaska Sup.Ct. 1980). Thus, although a consent judgment might be effective to establish a right of contribution against a nonsettling defendant, provided such defendant has an opportunity to contest the reasonableness of the settlement amount, Young v. Steinberg, 53 N.J. 252, 255 (1969), it is nonetheless a device for settlement. It is not the form of the implementation of the settlement that counts, but its substance. Indeed, had defendant Tefft not settled he would have only been chargeable "with the total verdict less that attributable to the settling defendant's percentage share." Cartel Capital Corp. v. Fireco of New Jersey, supra 81 N.J. at 569. His voluntary settlement for what may well be more than the percentage share of liability cannot impose additional liability on another defendant who has settled with plaintiff. New Jersey has long had a "strong policy in favor of *567 settlements." Theobald v. Angelos, 44 N.J. 228, 237 (1965) (Theobald II).
The contribution act has had a long history of judicial interpretation in New Jersey. In Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372, 383 (1954), it was held that the right to contribution accrues only on payment by a joint tortfeasor of a money judgment recovered against him on a judgment for the injuries he occasioned. Payment of more than a pro rata share entitles him to restitution under the statute, except as to a settling tortfeasor. Moreover, the court implied in Greyhound that contribution was not intended when all tortfeasors settle, when it stated:
Unlike the draft act submitted by the Commissioners on Uniform State Laws, 9 U.L.A. 156, our statute does not provide for contribution where the payment is made in fulfillment of a voluntary compromise or settlement of a claim for damages attributed to a joint tortfeasor. [Id. at 383.]
Subsequent to Greyhound, the court again analyzed the contribution act in Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954). The issue addressed in Judson was the effect of settlement by several defendants on the remaining defendants "if they suffer a verdict for damages." Id. at 92. The court held that:
... the injured person may be required to credit upon any verdict against the others not the consideration received in settlement but the settler's pro rata share of the amount of the verdict.... [Ibid.]
Judson was argued again in the Supreme Court, 25 N.J. 17 (1957) and the holdings of the two Judson opinions were summarized in Theobald II, supra:
... Those cases hold that a settlement with a joint tortfeasor, even though for less than a pro rata share of the total claim, nonetheless (1) reduces the total claim by the pro rata figure and (2) bars an action for contribution against the settling wrongdoer [44 N.J. at 232].
In Judson II the court was confronted with the issue of how to handle a settling tortfeasor who had paid what was ultimately determined to be less than his pro rata share. In Theobald I, 40 N.J. 295 (1963) and II the court was confronted with the mirror image issue: how to handle settlement by a party ultimately *568 found not to be a tortfeasor and a joint tortfeasor who settles for more than his pro rata share.
The first issue, settlement with a party who is not a tortfeasor was discussed in Hoeller v. Coleman, 73 N.J. Super. 502 (App.Div. 1962), certif. den. 38 N.J. 362 (1962). The court in Theobald II rejected the pro rata reduction, but permitted a pro tanto deduction for any amount less than the pro rata share if the settling party is not found to be negligent. This result was changed with the introduction and interpretation of the Comparative Negligence Act, N.J.S.A. 2A:15-5.1, et seq. Rogers v. Spady, supra 147 N.J. Super. at 277.
Theobald II addressed the issue of who is to receive the credit when a settling defendant pays more than his pro rata share, and held:
Defendant's just liability under our contribution statute, based on the equitable doctrine that equality is equity, is for a pro rata share. He, however, seeks to avoid part of his liability because a co-tortfeasor paid more than he had to under the law. If defendant can invoke the one-satisfaction rule, he will enrich himself to the extent of another's overpayment. Hence, as plaintiff correctly puts it, the question is whether it is the plaintiff or the defendant who should be "unjustly" enriched if there in fact is any "unjust" enrichment in this scene.
We think plaintiff has the better of the argument in terms of both fairness and utility. [44 N.J. at 239]
In concluding that court summarized its holding as follows:
To sum up, (1) if a claimant settles with one of several joint tortfeasors, there will be a pro rata reduction in the verdict against the remaining tortfeasors, whether the sum received is less or more than a pro rata share, and (2) if the claimant settles with one who is charged with the wrong but who in fact is not a party to it, the sum received (not exceeding a pro rata share) shall be applied in reduction of the verdict against the culpable parties. [Id. at 241.]
In summarizing the right to contribution, the court stated that an actual "verdict" was required. The clear import of this language is that settlement by all tortfeasors bars an action for contribution because there can no longer be an adversary verdict.
The effect of a consent judgment on a nonsettling tortfeasor was considered in Young v. Steinberg, supra 53 N.J. at 252. Young offers no support for defendant Tefft's position that he is *569 entitled to assert his contribution cross-claim. There, it was held that a settling defendant may recover contribution from a nonsettling defendant if the settling defendant obtains a consent judgment. Clearly a nonsettling defendant, although perhaps having the right to challenge the reasonableness of the settlement or assert collusion, has not in any way insulated himself from liability. The policy of our law is that a settling party is released from further responsibility.[3] There are many factors that enter into the decision to settle that are unrelated to the extent of plaintiff's injuries. Such factors include cost of trial, extent of insurance coverage and risk of exposure beyond coverage limits. Rova Farms, supra 65 N.J. at 490. In this context settlement cannot ipso facto be determinative of the quantum of damages owed plaintiff.
Justice Brennan discussed the alternatives to the policy of releasing the settling party in Judson v. Peoples Bank & Trust Co. of Westfield, supra:
True, the statute [Joint Tortfeasor Contribution Act] contains nothing whatever expressly dealing with the effect of a settlement, but the first alternative is a logical incident of the created right of contribution and no provision expressly stating that effect was necessary. The aim of the statute to make a settler responsible for his pro rata share is realized when the credit on the total damage is in the amount of that pro rata share, and provisions for a right of action against him at the hands of his co-tortfeasors were unnecessary. Any remaining problems of contribution are limited to such as may arise among the non-settling defendants when the payment by any one of them upon the reduced joint judgment exceeds his pro rata share of the total damage. [17 N.J. at 93.]
Thus, New Jersey opted for the "first alternative," which was that "the injured person may be required to credit upon any verdict against the others not the consideration received in settlement, but the settler's pro rata share of the amount of the verdict." The second and rejected alternative was that "the injured party may have a judgment for his total damage less the consideration received in settlement, and the judgment tortfeasor *570 who pays in excess of his pro rata share may have his action against the settler for contribution." Id. at 92.
The prerequisites for contribution are: (1) entry of a judgment or verdict; (2) determination of plaintiff's quantum of damages, and (3) the existence of nonsettling defendants. The last two elements are lacking here.
We hold that where percentages of negligence are appropriately determined by the fact-finder under N.J.S.A. 2A:15-5.2 and all defendants then settle with plaintiff, any cross-claims against each other are extinguished. Likewise a nonsettling defendant has no viable cross-claim to pursue against a settling defendant. Theobald v. Angelos, supra 44 N.J. at 232. The same result obtains under Wisconsin's statute which is the model for our comparative negligence law. See Pierringer v. Hoger, 21 Wis.2d 182, 188-193, 124 N.W.2d 106, 111-112 (Sup.Ct. 1963).[4] If only one defendant had settled, the nonsettling defendant would not have a cross-claim for contribution as such against the settling defendant, rather, there would be a credit against the amount he would otherwise have to pay on the verdict of that amount attributable to the settling defendant's percentage share of negligence or responsibility as determined by the fact-finder.
We emphasize that a settlement by plaintiff with a joint tortfeasor, whether for more or less of the pro rata claim or the percentage of negligence fixed by a jury under the Comparative Negligence Act, "bars an action for contribution against the settling wrong-doer." Theobald v. Angelos, supra 44 N.J. at 232.
Defendant Wismer having bought her peace by paying plaintiffs $100,000 under a general release, has no further exposure *571 either to plaintiff or to any cross-claiming co-defendant. Once a defendant settles with plaintiff on the affirmative claims and is released by plaintiff, there is neither necessity nor requirement for further participation in the proceedings on account of claims for contribution. The only reason to submit a question of a settling defendant's liability to a jury would be with respect to eventual setoff against plaintiff's award of a settling tortfeasor's payment if the trial proceeded to judgment against any remaining defendants. See Theobald v. Angelos, supra 44 N.J. at 252 and 40 N.J. at 295; Judson v. Peoples Bank & Trust Co. of Westfield, supra 17 N.J. at 92-93; cf. Rogers v. Spady, supra 147 N.J. Super. at 274.
Reversed and remanded for entry of an order dismissing the cross-claim for contribution of defendant Tefft.
NOTES
[1] There is a question of whether comparative negligence applies when plaintiff is not negligent. See Polyard v. Terry, 148 N.J. Super. 202, 209 (Law Div. 1977), rev'd on other grounds 160 N.J. Super. 497 (App.Div. 1978), aff'd 79 N.J. 547 (1979) (decided under the Tort Claims Act, N.J.S.A. 59:1-1, et seq.) Our cases have not specifically addressed the issue of whether negligence is nonetheless to be determined by percentages where there is no contributory negligence. N.J.S.A. 2A:15-5.1 refers to plaintiff's negligence in saying that if a plaintiff's negligence is not greater than that of defendant then "[c]ontributory negligence shall not bar recovery...." Emphasis supplied. The percentages of contributory fault normally either reduce the amount paid to the person recovering or fix the cut-off for recovery. "Any damages sustained shall be diminished by the percentage sustained of negligence attributed to the person recovering." Ibid. In the context of the first section of the statute "negligence" appears to refer to plaintiff's or contributory negligence. However, N.J.S.A. 2A:15-5.2 and 5.3 appear to still require a fixing of percentages unless the Comparative Negligence Act is considered of no effect in such circumstances. See Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 563 (1980) and Suter v. San Angelo Foundry & Machine Co., 81 N.J. 150, 164 (1979), which both involved strict liability in tort in product liability cases. Whether counsel for defendant Tefft may have been aware of that potential argument in agreeing to the payment it made is only a matter of speculation.
[2] New Jersey did not adopt the Uniform Contribution Among Tortfeasors Act as recommended by the national commission. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 95 (1954). Thus, generally, foreign precedent will be inapposite because of the statutory differences. 2 Williston, Contracts (3 ed. Jaeger 1957) § 345; Prosser, Torts, § 50 at 309 (4 ed. 1971) and 18 C.J.S., Contribution, § 11.
[3] Nilson v. Moskal, 70 N.J. Super. 389, 392-393 (Cty.Ct. 1961) held that a settlement extinguished the settling party's right to assert a right of contribution.
[4] New Jersey has always had a strong public policy favoring settlements. See e.g., Judson v. Peoples Bank & Trust Co., 25 N.J. 17, 35 (1957); cf. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 492-493 (1974). Elaborate and detailed forms of releases and covenants not to sue are not required.